JUSTICE GRAY,
concurring in part and dissenting in part.
I concur in the Court’s opinion on issue 1 and, with great reluctance, respectfully dissent from that opinion on issue 2. My reluctance is personal, based on my own familiarity with MS and the heartbreak of watching a close relative progress through the early stages of that incurable and progressive disease to a state of total physical incapacitation. My dissent, however, is based on my perception that the Court’s legal analysis of issue 2 is erroneous.
It is important to keep in mind at the outset that the burden of establishing entitlement to disability benefits is on the claimant. Under § 19-3-1002, MCA (1991), an employee who has become disabled while in active service is eligible for disability retirement benefits. “Disabled” means “unable to perform his duties by reason of physical or mental incapacity.” Section 19-3-1001, MCA (1991).
I raise the matter of who carries the burden because the Court suggests, at least by implication, that the PERB itself had some affirmative burden to meet. The Court does so by making the following statements:
1. “Although PERB did not employ a medical expert....”
2. “PERB did not present any medical testimony of its own.”
3. “Since PERB did not present any medical testimony of its own....”
4. “PERB did not attempt to refute the testimony of Stephen and Beverly Weber by offering medical testimony of its own ....”
These repeated statements suggest that the PERB had a burden to come forward with evidence, rather than merely to determine whether Mr. Weber had carried his burden of proving by a preponderance of the evidence that he was disabled — that is, unable to perform the duties of his position — by MS in September 1988 when he resigned. The Court’s apparent shifting of the burden is erroneous; it also reflects a lack of focus and clarity in other areas of the Court’s opinion on this issue.
In fact, the record in this case clearly supports the PERB’s finding that Mr. Weber did not meet his burden of proving that he was disabled by MS from performing his job at the time of his resignation in September 1988. Indeed, the only unequivocal testimony support *250 ing Mr. Weber’s claim came from Mr. Weber and his spouse; the PERB did not find Mr. Weber or his spouse credible based on Mr. Weber’s statements at the time of his resignation, during his wrongful discharge suit and to a variety of health care providers between 1986 and 1991 that evidenced no serious MS-type symptoms. This is the province of the trier of fact, not the District Court or this Court. I cannot agree to the reviewing courts substituting their judgment for that of the factfinder.
Nor do I agree with the Court that the PERB misapprehended the effect of Dr. Etter’s deposition testimony. It is critical to note that Dr. Etter provided the only medical opinions in this case and he offered two such opinions. His first opinion, supporting Mr. Weber’s claimed disability as of August 1988, was based entirely on Mr. Weber’s statements to him at a significantly later date; it was not based on any medical testing done in 1988 or, indeed, on any medical records for the period from August 1988 through August 1991.
Dr. Etter’s second medical opinion did not support Mr. Weber’s claim of disability in August 1988. That opinion was based on statements which had been made by Mr. Weber to others at various pertinent times, specifically regarding his health and the reasons he left his position with the State; those statements were inconsistent with Mr. Weber’s statements to Dr. Etter.
In short, faced with statements made to others by Mr. Weber which were inconsistent with those made to Dr. Etter, the doctor changed his medical opinion to one which did not support Mr. Weber’s claim. How the Court can conclude that the PERB misapprehended the effect of Dr. Etter’s testimony in this regard is inexplicable to me under these circumstances. Equally inexplicable is the Court’s use of such a technique to reject the entirety of the PERB’s decision.
Indeed, the weight of the medical evidence in this case supports the PERB’s determination. During more than thirty visits to the VA Medical Center at Fort Harrison from October 1988 to May 1991, not a single complaint was recorded from Mr. Weber of an MS-related symptom. In fact, doctors who saw Mr. Weber from August 1988 through May 1991 recorded a lapse of double vision complaints during that time. Importantly, Dr. Etter — relied on by the District Court and this Court as Mr. Weber’s treating physician — saw Mr. Weber once in August 1988 and did not mention any complaints of MS or stress-related symptoms made by Mr. Weber at that time. He did not see Mr. Weber again until October 1991. As discussed above, his medical opinion that Mr. Weber was disabled in August 1988 was *251 not based on medical testing or medical records for the period August 1988 through August 1991; rather, it was based entirely on Mr. Weber’s statements to him regarding his condition at that time.
In further regard to Dr. Etter’s testimony, the Court states that the medical opinions of a claimant’s treating physician are entitled to special weight and should not be disregarded absent specific legitimate reasons for doing so. While I agree with these general principles, it is my view that there are at least two specific legitimate reasons for not giving Dr. Etter’s medical opinion supporting Mr. Weber’s claim special weight in this case. First, Dr. Etter was not Mr. Weber’s only treating physician during the period at issue; indeed, Dr. Etter did not even see Mr. Weber between the time of the resignation and 1991. Second, Dr. Etter’s medical opinion was based entirely on the “history” Mr. Weber provided him, and that opinion changed dramatically when presented with other statements made by Mr. Weber which were inconsistent with those Mr. Weber made to Dr. Etter.
Finally, I note in this regard that giving special weight to a treating physician does not compel a factfinder to determine that a claimant is credible; nor does it require giving such special weight to only one portion of that physician’s testimony that all other evidence of record — including a contrary opinion from that physician — is counterbalanced. Yet that is the effect of the Court’s determination that the PERB “misapprehended the effect” of Dr. Etter’s deposition testimony.
The Court also suggests that Mr. Weber’s earlier statements about his health show only that he did not believe himself disabled at the time of his resignation in September 1988.1 could not disagree more. On the record before us, Mr. Weber is the only person in a position to state directly the extent to which he was actually disabled — that is, totally unable to perform his job — in September 1988. His various statements regarding his health during that time, made in part in the context of a lawsuit in which he successfully established that he was wrongfully discharged, are evidence of the state of his health at that time and of his ability to perform his job at that time.
In this regard, the Court also makes an anomalous comment on Mr. Weber’s inconsistent health-related statements which relates back to my earlier-expressed concern regarding burden shifting. The Court states that Mr. Weber’s inconsistent statements “do not conclusively prove that he was not, in fact, disabled at that time.” While the Court’s statement is correct, it is also irrelevant. Mr. Weber *252 carried the burden of establishing his eligibility for disability benefits; the PERB had no burden to establish his ineligibility.
Finally, the Court attempts to undercut the hypothetical question posed to Dr. Etter, and Dr. Etter’s response, by stating that the question did not acknowledge that MS is an incurable, progressive disease subject to periods of remission and exacerbation. Here, the Court is apparently trying to rescue a bad situation by suggesting that it has more specialized knowledge of the disease and its ramifications than does Dr. Etter, the supposed expert in this case. Moreover, the Court’s undoubtedly true statement about the nature of MS has no relevance to whether Mr. Weber was, in fact, disabled by that progressive disease at the time he resigned from his job in September 1988. That is the issue before us.
I conclude that substantial credible evidence supports the PERB’s numerous and detailed findings. I conclude also that the PERB did not misapprehend the effect of Dr. Etter’s testimony or, indeed, any other testimony; nor am I left with any conviction that a mistake was made by the PERB. I would reverse the District Court and reinstate the PERB’s decision.